IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:24-CR-111 |
| | ) | |
| MICHAEL HENRY, | ) | |
| | ) | |
| Defendant. | ) | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING FACTORS

The United States of America, by Erik S. Siebert, United States Attorney, and Matthew J. Heck, Assistant United States Attorney, offers this position paper regarding the sentencing factors stated in 18 U.S.C. §3553(a). The government has no objection to the content of the Presentence Investigation Report (PSR). According to the PSR, the correct advisory calculation under the United States Sentencing Guidelines (U.S.S.G., or "Guidelines) is 0-6 months of imprisonment, one (1) to three (3) years of supervised release, one (1) to three (3) years of probation, and a fine of $200 to $9,500. Based on the nature of the offense, and the defendant's characteristics, the United States respectfully requests a sentence of no imprisonment, 3 years probation, and a fine of $250,000.00 as it would be sufficient but no greater than necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

Government officials are expected to act with integrity, especially those who are involved in the procurement of goods and services. The defendant, a government official, was a paid consultant for a company that he assisted in demonstrating and promoting their products within the Department of Defense. During his paid consultancy, the defendant's command sponsored this company to receive a $350 million dollar contract from the General Services Administration (GSA). The defendant received $96,000 from Company A in about one year. That is a

significant sum. This is a financial crime that warrants significant financial consequences for the defendant. Not merely, to punish the defendant for his conduct, but to deter other government officials from engaging in this conduct. Therefore, the government requests this court fine the defendant $250,000.00 and sentence him to three years probation. We ask this court to not sentence the defendant to any period of incarceration.

## I. MOTION FOR ACCEPTANCE OF RESPONSIBILITY

Because of the defendant's timely plea, a motion to reduce the offense level an additional one point under U.S.S.G. § 3E1.1 is appropriate as has been done in this case. The government represents to the Court that this defendant has complied with *all* aspects of his plea agreement in all respects and fully to date.

## II. PROCEDURAL BACKGROUND

On September 26, 2024, a Grand Jury sitting in the Eastern District of Virginia returned a one count indictment charging the defendant with Acts Affecting a Personal Financial Interest, in violation of 18 U.S.C. § 208(a). PSR ¶ 1. On January 28, 2025, the defendant pled guilty before this court and the case was continued for sentencing. PSR ¶ 2.

## III. FACTUAL BACKGROUND

At the time of the instant offense the defendant was employed as a research analyst at the Joint Staff J6 Tactical Integration Element. PSR ¶ 7.1. As part of his official duties, the defendant identified and demonstrated systems and best practices across the Department of Defense (DOD). *Id*. He was "not limited to advising government personnel, he also advised vendors on what equipment was needed, how to best integrate the equipment, and the number of pieces of equipment required to meet operational requirements." *Id*.

On November 13, 2018, the defendant incorporated Industrial Communications Group, LLC ("ICG"). PSR ¶ 7.5.  Initially, the defendant had three business partners in ICG, all of whom were employed by DOD contractors at the time.  PSR ¶ 7.8. One of these business partners was employed by Company A. PSR ¶ 7.9.  In February of 2020, the defendant emailed his business partners "As discussed, to keep clean and avoid any perception of impropriety, its just me on ICG legal paperwork as of today.  We can add you back on once I leave govt (sic) or any of you leave your respective companies or the timing is right."  PSR ¶ 7.10.  One month later the defendant removed his business partners from the ICG bank account "so no connection." PSR ¶ 7.11.

The defendant began consulting with Company A in and around July 2019.  PSR ¶ 7.18. At the time he knew he was not authorized to consult on behalf of Company A.  PSR ¶ 7.20. During his consultancy with Company A, the defendant was paid $96,336.00. PSR ¶ 7.24.

Around February 2020, the defendant offered the CEO of Company B his consulting services in the commercial marketplace.  PSR ¶ 7.38. During the conversation, the defendant admitted to consulting for Company A and stated that he had outside approval to do so.  *Id*.  A few weeks later the defendant had another conversation with the CEO of Company B during which the CEO of Company B informed the defendant of his concerns regarding a potential conflict of interest and told the defendant he should not be engaged in such business.  PSR ¶ 7.39.  The CEO of Company B told the defendant that the defendant should report this to his superiors. *Id*.  The defendant did not report his consultancy with Company A to his superiors at the JSJ6. PSR ¶ 7.40.  In June of 2020, Company B disclosed the defendant's conflict of interest

to the JSJ6.  PSR ¶ 7.41.  Thereafter, the defendant terminated his Consultancy with Company A. PSR ¶ 7.42.

In September of 2020, the government revoked the defendant's prior approval for outside employment and directed the defendant to cease all outside business activities. PSR ¶ 7.43. Despite being directed otherwise, the defendant began consulting again with Company C without outside approval in February 2021.  This work continued until approximately the beginning of 2022.  The defendant previously consulted for Company C from June 2020 to November 2020. PSR ¶ 51.

In February of 2021, the defendant offered his consulting services to a part owner of Company D.  PSR ¶ 9.  The part-owner of Company D understood this as an offer to consult on Company D's behalf to the DOD. *Id*.  Prior to this offer the defendant worked directly to promote Company D's product within the DOD.  *Id*.

In January of 2023, the defendant began negotiating a second consultancy with Company A. PSR ¶ 11  At the time of these discussions the defendant was employed in the same capacity at the JSJ6 and working on matters related to Company A.  *Id*.  The defendant was retiring and did receive approval to negotiate employment with Company A with the understanding that the defendant would recuse himself from matters involving Company A. *Id*.  The defendant did not recuse himself from matters involving Company A during that time.  *Id*.  Ultimately, in April of 2023, Company A hired the defendant as a consultant. *Id*. This consultancy lasted until September of  2024 during which time the defendant was paid $677,704.00.  PSR ¶ 51.

## IV. STANDARDS GOVERNING SENTENCING

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines purely advisory, but emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. *Id.* at 264. The Supreme Court reaffirmed this principle in *United States v. Kimbrough*, 552 S. Ct. 85 (2007), emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Id.* at 564. Finally, in *Gall v. United States*, 128 S. Ct. 586 (2007), the Supreme Court instructed that the sentencing court should calculate the Sentencing Guideline range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. *Id.* at 596-97. The *Gall* Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one.").

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence." *United States v. Simmons*, 269 Fed. Appx. 272 at *1 (4th Cir. 2008) (*citing United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)).

5

## V. FACTORS UNDER 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), when imposing a sentence, the Court must consider (1) the

nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3)

the need for the sentence imposed to promote the goals of sentencing, (4) the kinds of sentences

available, (5) the sentencing guideline range, (6) any pertinent policy statement issued by the

Sentencing Commission, (7) the need to avoid unwarranted sentence disparities among

defendants with similar records who have been found guilty of similar conduct, and (8) the need

to provide restitution to any victims of the offense.

### A.        Nature and Circumstances of the Offense and General Deterrence

The defendant's crime is undoubtedly serious, as a public official involved in

procurement decisions, he is expected to act with integrity.  The public must be assured that

when the government selects products or services that it does so in the best interest of the public

and not in the interest of unknown bureaucrats.

Instead, the defendant compromised this process by engaging in a conflict of interest

with Company A.  For that reason, it is imperative that this court fashion a sentence that reminds

the public that corrupt public officials will be punished harshly. A key objective of sentencing

corrupt public officials should be to deter public officials from engaging in corruption. *see*

*United States v. Morgan*, Nos. 13-6025, 13-6052, 2015 WL 6773933, at *22 (10th Cir. Nov. 6,

2015) ("Deterrence is a crucial factor in sentencing decisions for economic and public corruption

crimes."); *see also United States v. Sorenson*, 233 F. Supp. 3d 690, 699 (S.D. Iowa 2017)

("When a corrupt office holder receives too lenient a sentence, the public understandably loses

confidence in the integrity of its system of government. . . Sentencing corrupt office holders to a

colloquial 'slap on the wrist' may over time exacerbate an endemic cycle of corruption."). While the charged crimes in those cases are different , this court should apply the same rationale. Government officials who do not follow the rules should suffer harsh consequences.

The defendant's conduct with Company A was egregious.  The defendant suggested Company A sell a new product to the government.  PSR ¶ 7.25.  Following that proposal he coordinated meetings with government officials, requested other government officials to advocate on the products behalf, recommended the U.S. Army purchase it, and for the National Security Administration (NSA) to certify it. PSR ¶ 7.26, ¶ 7.28, ¶ 7.29.  While this product did not pan out, the defendant's time as a consultant with Company A was not unfruitful.  The defendant's command sponsored a $350 million dollar contract with the GSA which was ultimately awarded to the Company. PSR ¶ 31.  This contract is for a significant amount and the integrity of its award should not be called into question.  However, due to the actions of the defendant members of the public may do so.  That is why the government has put into place restrictions on conflicts of interest.

This court should not forget that during this course of conduct the defendant also offered his services to Company B, while he was promoting Company B's product within the DOD. PSR ¶ 25-29, 38-39.  Had this relationship been consummated it too would have been a conflict of interest.  When the defendant was told that he should report his consultancy with Company A to his superiors he did not.

This brazen conduct did not stop post-offense.  After his conflict of interest with Company A was discovered and after the defendant was told to cease all outside employment activities, he began consulting again with Company C, another defense contractor.  PSR ¶ 7.44

and ¶ 51.  Moreover, in February of 2021, the defendant asked Company D if he could become a paid consultant for them.  PSR ¶ 9.  Company D only engaged in business with the government, specifically the DOD.  His post-offense conduct reflects an individual who has no regard for the law or the protections that the government puts in place to ensure that there is no appearance of impropriety in the procurement process.  If the court wondered whether the defendant felt remorse for his actions or learned from his mistakes, these actions answer that question with a resounding no.

Even years later the defendant continued to disregard the rules surrounding who he could consult for and when. Leading up to his retirement the defendant disregarded his obligation to recuse himself from matters involving Company A while he was negotiating employment with them.  The defendant's actions make clear that he knew what he was doing was wrong, but continued to do so anyway.

A financial crime should receive a financial penalty.  Therefore, the government requests an upward variance of a fine of $250,000.00.  This fine is warranted as over the defendant's course of conduct he received approximately $96,000 for his consultancy with Company A.  He did not just engage in one conflict of interest, his course of conduct includes attempting to work with another company with whom he would have had conflict of interest, and working for or attempting to work for other DOD contractors even after he was told not to.  18 U.S.C. 208(a) does not carry forfeiture and there will be no restitution in this case.  A fine of $96,000 merely dispossess the defendant of his ill-gotten gains. A fine of even the top of guideline range would result in windfall for the defendant.  That cannot be the case.   This court must send a strong message to government officials that conflicts of interest will not be tolerated and a fine of

$250,000 sends that message. A term of probation of three (3) years will ensure that the defendant makes timely payments on any fine ordered by this court.

**B**. **History and Characteristics of the Defendant and Ability to Pay a Fine**

The defendant's history and characteristics also support the government's recommendation for no incarceration.  The defendant served this country honorably in the U.S. Army for almost 30 years.  PSR ¶ 52.  During his period of military service, the defendant took part in combat operations and had traumatic experiences. PSR ¶ 56.  His commitment to his country and the injuries he suffered as a result must be of credit to him. PSR ¶ 39 and 40.

However, his honorable and decorated military career reflect an individual who knew right from wrong.  It underscores that the defendant knew his actions were wrongful and against the interest of the Government he promised to serve.  Furthermore, his decorated military service provided him the contacts and leverage that made him a valuable asset in the government procurement space.

The defendant has over a million dollars in assets and his total net worth is approximately $800,000.  PSR ¶ 57.   The defendant's monthly income is nearly $20,000.  Certainly, his ability to earn a living may be impacted by the current case.  However, he receives approximately $10,000 a month in retirement benefits from his civilian and military retirements. PSR ¶ 57.  The defendant is more than able to pay a fine, even one of $250,000.00.

## VII.  CONCLUSION

The government agrees that the PSR's Guidelines calculations are correct.  For the reasons stated above, the government asks the Court to impose a sentence of no incarceration, three (3) years probation, and a fine of $250,000.

Respectfully submitted,

Erik S. Siebert
UNITED STATES ATTORNEY

By:     _____/s/_____

Matthew J. Heck
Assistant United States Attorney
New York State Bar No. 5313341
United States Attorney's Office
World Trade Center, Suite 8000
101 W. Main Street
Norfolk, Virginia 23510
Office Number - 757-441-3221
E-Mail Address – matthew.heck@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 1st day of May 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

      Andrew C. Bosse, Esquire
      500 East Main Street
      Suite 1400
      Norfolk, Virginia 23510
      (757) 961-5771

I further certify that on this 1st day of May 2025, I caused a true and correct copy of the foregoing Position of the United States with Respect to Sentencing Factors to be e-mailed to the following:

      Jeffrey A. Noll
      Senior United States Probation Officer
      827 Diligence Drive, Suite 210
      Newport News, Virginia 23606
      (757) 223-4663

                    **/s/**
              Matthew J. Heck
              Assistant United States Attorney
              New York State Bar No. 5313341
              United States Attorney's Office
              World Trade Center, Suite 8000
              101 W. Main Street
              Norfolk, Virginia 23510
              Office Number - 757-441-3221
              E-Mail Address – matthew.heck@usdoj.gov